# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MICHELLE R. WEDDERBURN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 1:19-cv-215-PX |
| BALTIMORE COUNTY PUBLIC SCHOOLS, | * | |
| | * | |
| Defendants | | |

***

## MEMORANDUM OPINION

Pending before the Court in this employment discrimination action is Defendant Baltimore County Public Schools' motion to dismiss, ECF No. 21, and pro se Plaintiff Michelle Wedderburn's motion for leave to file a Second Amended Complaint, ECF No. 31. The motions are fully briefed and no hearing is necessary. *See* Loc. R. 105.6. For the reasons discussed below, the Court grants BCPS's motion to dismiss and grants in part and denies in part Wedderburn's motion for leave to amend.

### I. Background

### A. Factual History

Unless otherwise indicated, the Court takes as true the facts from the proposed Second Amended Complaint and construes them most favorably to Wedderburn. Employed in the education field for more than 20 years, Wedderburn has worked for Defendant Baltimore County Public Schools ("BCPS") since at least 2015. ECF No. 31-3 ¶¶ 7–8. She holds a bachelor's degree in early childhood education, a master's degree in school leadership, and an advanced professional certificate from the state of Maryland. *Id.* Prior to the events of this case,

Wedderburn had never received a poor job evaluation or criticism about her performance. *Id.* ¶ 21.

On October 9, 2015, Wedderburn, who was then the Assistant Principal at New Town High School, tried to intervene during a student altercation and was severely injured. *Id.* ¶ 8. She sustained "a concussion, aggravation of a herniated disc in the cervical spine, [and] injury to her lower back, right knee, and left arm." *Id.* As a result, Wedderburn became permanently disabled. *Id.* To this day, she suffers from physical and emotional conditions (Post-Traumatic Stress Disorder, or "PTSD") arising from the altercation. *Id.* ¶ 35.

After being injured, Wedderburn returned in January of 2016. Thereafter, Wedderburn was subjected to what she characterizes as "adverse treatment" and denial of reasonable accommodations for her disabilities. *Id.* ¶ 8. In response, Wedderburn filed a complaint with the Maryland Commission on Civil Rights ("MCCR"). *Id.* ¶ 9.

In May 2016, Wedderburn received a letter from Assata Peterson, BCPS's EEO Officer, referring Wedderburn to the "Options process" regarding Wedderburn's purported unwillingness "to do her job without accommodations." *Id.* ¶ 10. The Options process requires that Wedderburn meet with BCPS's Human Resource Department "to discuss return to work options when an employee has been medically determined unable to perform the essential functions of [her] job with or without accommodation." *Id.* ¶ 24. However, Wedderburn views "being placed in the Options process [as] one step from termination." *Id.* Thus, Wedderburn characterizes placement in the Options process as the "first aggressive employment action" BCPS took against her and as retaliatory for her requests to receive reasonable accommodations. *Id.* ¶ 10. Wedderburn eventually withdrew her requests for accommodations and was removed from the Options process on May 27, 2016. *Id.* ¶ 11.

"A few weeks later," BCPS demoted Wedderburn from Assistant Principal at New Town to "early childhood classroom teacher" at Dogwood Elementary School. *Id.* ¶ 12; ECF No. 31-4 at 6. This demotion resulted in lost annual income of $25,000 and lost pay during the summer months. ECF No. 31-3 ¶ 12. Then in July 2016, Wedderburn received her first-ever unsatisfactory year-end performance evaluation in her 20-year career. *Id.* ¶ 13. Wedderburn alleges that the poor evaluation stemmed from her having missed work to recuperate from her injuries. *Id.* Wedderburn identifies the demotion and negative evaluation as BCPS's second and third "aggressive adverse employment" action. *Id.* ¶ 12

Wedderburn thereafter entered into a settlement agreement with BCPS and was reinstated to an assistant principal position, this time at Cockeysville Middle School ("CMS"), to begin in August 2017. *Id.* ¶¶ 14–15. Wedderburn had never worked in a middle school, and BCPS did not provide a legitimate reason for refusing to place Wedderburn in a high school. *Id.* Wedderburn received a lower salary in the new position than when she worked at New Town. *Id.* ¶ 14.

Less than one month after signing the settlement agreement, Peterson sent Wedderburn a letter threatening "disciplinary action" if Wedderburn used her "assistive device."[1] *Id.* ¶ 16. Wedderburn stopped using the device and her condition worsened. *Id.*

CMS Principal Deb Magness was copied on Peterson's letter and, as a result, learned about Wedderburn's disability. *Id.* ¶ 17. Thereafter, Magness issued to Wedderburn a letter that set out Wedderburn's alleged performance deficiencies. *Id.* Magness also submitted for Wedderburn a "subpar" year-end evaluation that focused on job functions not listed in the assistant principal job description, isolated incidents long since resolved, and referenced CMS-

---

[1] The proposed Second Amended Complaint does not explain the nature of Wedderburn's assistive device.

3

specific practices of which Wedderburn was not aware. *Id.* ¶ 19. This negative evaluation prompted Wedderburn to be placed on an "assistance plan." *Id.* ¶ 21. As part of the assistance plan, Wedderburn was forced to "place emphasis on non-essential functions not listed in the Assistant Principal job description and included performance standards that Wedderburn had already mastered." *Id.* Once again, Wedderburn contends that the assistance plan and the performance evaluations were pretext meant to establish grounds to eventually terminate her. *Id.* ¶ 21. On December 3 and 13, 2018, Wedderburn complained to the school administration about the failures to accommodate and BCPS's adverse treatment arising from her disability. *Id.* ¶ 22.

On December 14, 2018, Magness called Wedderburn into her office and informed her in writing that Wedderburn was failing the assistance plan. *Id.* ¶ 23. By separate correspondence, Wedderburn was placed in "Phase II of the Employee Attendance Monitoring Program," and a third letter informed Wedderburn that because of her recent complaints to school administrators, she was being placed back in the Options process. *Id.* Wedderburn's keys, computer and school identification were taken from her and police escorted her from the building. *Id.* Because she was not permitted to work during this period, Wedderburn was forced to use accrued sick leave to continue receiving pay. *Id.* ¶ 25. Wedderburn identifies this incident as a fourth and final "aggressive adverse employment action." *Id.* ¶ 23.

Wedderburn tried to comply with the Options process by applying for other jobs within the school district, but she received no job offers. *Id.* ¶ 25. At the same time, Wedderburn obtained physician notes certifying that she could perform her job functions, yet BCPS kept Wedderburn in the Options process for three months and in contravention of its own policies. *Id.* ¶¶ 24–25.

On February 11, 2019, Wedderburn returned to work at CMS. ECF No. 31-3 ¶ 28. Shelley Harris had been hired as Assistant Principal to replace Wedderburn. *Id.*; ECF No. 31-4 at 7. On March 14, 2019, Magness again issued Wedderburn a negative evaluation which claimed once again that Wedderburn was failing the assistance plan. *Id.* ¶ 31. Wedderburn, in response, filed a grievance contesting the representations made in the evaluation. As of the filing of the proposed Second Amended Complaint, the grievance remains unresolved. *Id.* ¶ 34.

Around the same time, Wedderburn's psychiatrist concluded that her job situation was aggravating her PTSD symptoms. *Id.* ¶ 35. The psychiatrist completed FMLA paperwork for Wedderburn and suggested that she be reassigned. *Id.* At this point, Wedderburn did not have enough "hours worked" to receive FMLA. *Id.*

When Wedderburn requested another accommodation from BCPS on May 8, 2019,[2] Peterson claimed that she needed a medical form to process this request. *Id.* ¶¶ 36–37. BCPS does not require such forms to process accommodation requests and in Wedderburn's case, BCPS already had the requested information. *Id.* ¶ 37. As of May 23, 2019, the close of the school year, BCPS had not granted Wedderburn's accommodation request, resulting in a de facto denial. *Id.*

## B. Procedural History

On June 8, 2018, Wedderburn filed a formal EEOC complaint, alleging that BCPS had discriminated and retaliated against her, refused to provide reasonable accommodation, and created a hostile work environment on account of her disability and in violation of the Americans with Disabilities Act ("ADA"). *Id.* ¶ 20. On January 23, 2019, Wedderburn filed her initial Complaint against BCPS and Peterson, and five days later amended her Complaint and moved

---

[2] The proposed Second Amended Complaint does not disclose the nature of the requested accommodation.

for Temporary Restraining Order ("TRO"). *See* ECF Nos. 1, 3, 10. Wedderburn sought immediate injunctive relief to prevent BCPS from terminating her.

On February 1, 2019, the Court held a recorded phone conference to discuss the motion for a TRO. ECF No. 16. During that conference, BCPS informed the Court and Wedderburn that she would not be fired imminently. BCPS more particularly explained that BCPS, by regulation, provides a multi-tiered review process which would allow Wedderburn to contest robustly any potential removal from her job. Learning this information, Wedderburn withdrew her motion for a TRO. ECF No. 31-3 ¶ 27; ECF No. 17.

On April 15, 2019, BCPS moved to dismiss Wedderburn's Amended Complaint. ECF No. 21. BCPS argues that because Wedderburn had not requested or received a right-to-sue letter from the EEOC, the ADA claims must be dismissed for failure to exhaust administrative remedies. ECF No. 21-1 at 3–6.

On May 21, 2019, however, Wedderburn renewed her motion for a TRO and two days later moved for leave to file a Second Amended Complaint. The proposed Second Amended Complaint brings additional violations of the Rehabilitation Act, which, unlike the ADA claims, do not require administrative exhaustion prior to filing suit. ECF No. 31-3 at ¶¶ 42, 50. Once again, the proposed Second Amended Complaint is silent on whether Wedderburn requested or received a written notice from the EEOC of the right to file suit in this Court.

The Court next held an in-person hearing on the renewed TRO motion on June 6, 2019. The Court denied Wedderburn request for a TRO and granted Wedderburn's oral motion to dismiss defendant Peterson from the suit. ECF No. 37 at 1. Wedderburn also represented that she had requested a right-to-sue letter in January 2019, but then withdrew the request so that the EEOC could continue investigating her claims. At the time of the hearing, the EEOC had not

6

issued a formal determination or a right-to-sue letter, and the Court has not received any information that the EEOC has issued such a letter since the hearing.

## II. Motion to Dismiss

### A. Standard of Review

In ruling on a motion to dismiss under Rule 12(b)(6), the Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *See Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). In other words, there must be sufficient allegations to render the plaintiff's claims facially plausible, or to permit reasonable inference that the defendant is liable for the alleged misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

Because Wedderburn is proceeding pro se, the Court construes her pleadings liberally to ensure that potentially meritorious claims survive challenge. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). However, the Court cannot ignore a pro se plaintiff's clear failure to allege facts setting forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990) ("The 'special judicial solicitude' with which a district court should view such pro se complaints does not transform the court into an advocate. Only those questions which are squarely presented to a court may properly be addressed." (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277 (4th Cir. 1985))).

**B. Analysis**

BCPS argues that Wedderburn's Amended Complaint, which brings solely ADA claims, must be dismissed because Wedderburn did not exhaust administrative remedies prior to filing suit. ECF No. 21-1 at 3–6. The Court agrees.

The ADA prohibits discrimination against persons with disabilities. *See* 42 U.S.C. § 12112(a)–(b). The statute shares Title VII's requirement that a plaintiff must exhaust her administrative remedies "by filing a charge with the EEOC before pursuing suit in federal court." *Sydnor v. Fairfax Cty.*, 681 F.3d 591, 591 (4th Cir. 2012); *see also Lewis v. MV Transp., Inc.*, 8:12–cv–00983–AW, 2012 WL 4518541, at *3 (D. Md. Sept. 28, 2012) ("Under the ADA, the exhaustion requirements and filing procedures are identical to those applicable to claims under Title VII."). In *Fort Bend County v. Davis*, the United States Supreme Court made clear that although the exhaustion requirement is not jurisdictional, it is nonetheless a mandatory "claim-processing rule" that may result in dismissal of the case. *See* 139 S. Ct. 1843, 1851–52. (2019) ("A Title VII complainant would be foolhardy consciously to take the risk that the employer would forgo a potentially dispositive defense."). Following *Davis*, this Court has analyzed motions to dismiss for failure to exhaust under the standards set forth in Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Rowlette v. Lifebridge Health*, No. RDB-18-2706, 2019 WL 5696841, at *2 (D. Md. Nov. 4, 2019); *Carter v. Montgomery Cty.*, No. TDC-18-2249, 2019 WL 3804765, at * (D. Md. Aug. 13, 2019).

To exhaust her administrative remedies before filing suit in this Court, a plaintiff must first file a formal charge with the EEOC. *See* 42 U.S.C. § 12117(a); *id.* § 2000e–5(b), (f)(1). If, after 180 days, the EEOC has neither reached a settlement agreement nor filed suit on behalf of the plaintiff, the agency may issue a notice of the plaintiff's right to file a civil action. 42 U.S.C.

§ 2000e-5(f)(1). Termed a "right-to-sue" letter, the plaintiff cannot file suit in this Court until she is "entitled" to receive this notice. *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir. 1982).

To demonstrate entitlement to a right-to-sue letter, a plaintiff must show that the EEOC has concluded its work with her case. *See Gardner v. Md. Mass Transit Admin.*, No. JKB-18-365, 2018 WL 2193692, at *4–5 (D. Md. May 14, 2018). If the plaintiff requests the EEOC to issue a right to sue letter, the EEOC must "promptly issue such notice" and then terminate its involvement, *see* 29 C.F.R. § 1601.28(a)(1), (3), leaving the plaintiff free to file her claims in federal court. Otherwise, the EEOC will continue handling the matter, thereby precluding suit. *See Gardner*, 2018 WL 2193692, at *5; *Richardson v. Md. Transit Admin.*, No. RDB-18-0884, 2019 WL 1002597, at *5 (D. Md. Mar. 1, 2019).

The Amended Complaint is currently the operative one. However, the Court recognizes that Wedderburn has also moved for leave to file a second Amended Complaint after BCPS raised exhaustion in its motion to dismiss. Accordingly, the Court has reviewed both the first Amended Complaint and the proposed Second Amended Complaint to ascertain whether Wedderburn has either received the right-to-sue letter or requested in writing the same. Nothing in either complaint references the issuance of a right-to-sue letter. Wedderburn also candidly admitted at the June 2019 hearing that she had rescinded her request for a right-to-sue letter because she wished the EEOC to continue its investigation and that no letter had yet issued. Accordingly, the Court finds that Wedderburn has not exhausted administrative remedies as to her ADA claims. The ADA claims in the Amended Complaint are thus dismissed. Similarly, the Court denies Wedderburn's motion to file the same ADA claims in the proposed Second Amended Complaint. *See Gardner*, 2018 WL 2193692, at *4–5. This dismissal, of course, is

without prejudice so as to allow Wedderburn the opportunity to refile her ADA claim, if appropriate, at the conclusion of the EEOC investigation and upon receiving a right-to-sue letter. *See, e.g.*, *Fahnbulleh v. GFZ Realty, LLC*, 795 F. Supp. 2d 360, 362–63 (D. Md. 2011); *Algea v. Schweiker*, 529 F. Supp. 163, 168 (D. Md. 1981).

### III. Motion for Leave to Amend

#### A. Standard of Review

The Court next turns to Wedderburn's motion for leave to file the proposed Second Amended Complaint. A plaintiff may timely amend her pleadings once without leave of court. Fed. R. Civ. P. 15(a). Otherwise, the Court will treat the motion for leave to amend liberally, granting leave "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, when allowing amendment would "be prejudicial to the opposing party, when the moving party has acted in bad faith or with a dilatory motive, or when the amendment would be futile." *Arora v. James*, 689 F. App'x 190, 190 (4th Cir. 2017) (*quoting Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)) (internal quotation marks omitted).

A claim is futile when it is "clearly insufficient or frivolous" and thus cannot survive a motion to dismiss. *Whitaker v. Ciena Corp.*, No. RDB-18-0044, 2018 WL 3608777, at *3 (D. Md. July 27, 2018). In assessing whether amendment would be futile, the Court reviews the claim for sufficiency pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Kerrigan v. Bd. of Educ. of Carroll Cty.*, No. JKB-14-3153, 2016 WL 470827, at *3 (D. Md. Feb. 8, 2016).

#### B. Analysis

The primary purpose of Wedderburn's proposed Second Amended Complaint is to bring parallel claims under the Rehabilitation Act based on the identical factual predicate. BCPS

raises three arguments in opposition. First, as to three of the four alleged adverse actions, BCPS contends the claims are time-barred and thus allowing amendment would be futile. BCPS next argues that the proposed Second Amended Complaint insufficiently pleads facts by which the Court may plausibly infer that Wedderburn suffered adverse employment action on account of her disability. Third, BCPS argues that the Court should not allow amendment on equitable grounds because BCPS would be forced to defend the same claims in two fora—before the EEOC and this Court. The Court addresses each argument separately.

### 1. Statute of Limitations

Amendment of a claim is futile when the claim is clearly barred by the statute of limitations. *See United States v. Pittman*, 209 F.3d 314, 317 (4th Cir. 2000); *Everett v. Prison Health Srvs.*, 412 Fed. App'x 604, 606 (4th Cir. 2011). Statute of limitations defects are pleaded as an affirmative defense; however, when "time bar is apparent on the face of the complaint," the Court may dismiss the claim at the Rule 12(b)(6) stage. *Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005); *see also Goodman v. Praxiar, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

"A disabled plaintiff's employment discrimination cause of action accrues on the date that the alleged unlawful employment practice occurs." *Martin v. Sw. Va. Gas Co.*, 135 F.3d 307, 310 (4th Cir. 1998). Because the Rehabilitation Act lacks an explicit statute of limitations, courts "borrow" the limitations period from the "most appropriate or analogous state statute of limitations." *Jeandron v. Bd. of Regents of Univ. Sys. of Md.*, 510 F. App'x 223, 226 (4th Cir. 2013) (unpublished table decision). Like the Rehabilitation Act, the Maryland Fair Employment Practices Act ("MFEPA") prohibits employment discrimination based on disability and in retaliation for opposing discriminatory conduct. *See* Md. Code Ann., State Gov't §§ 20-601, 20-606(a)(4), (f). Thus, the United States Court of Appeals for the Fourth Circuit has held that

federal courts sitting in Maryland apply the MFEPA's two-year statute of limitations to Rehabilitation Act claims. *Ott v. Md. Dep't of Pub. Safety & Corr. Srvs.*, 909 F.3d 655, 660 (4th Cir. 2018).

BCPS contends that many of the adverse employment actions Wedderburn identifies in her proposed Second Amended Complaint are barred by the statute of limitations. ECF No. 35 at 8–9. The Court agrees. Among the four pleaded adverse actions, the first three occurred between May and July of 2016. ECF No. 31-3 ¶¶ 10–13. Wedderburn did not file suit, however, until January 2019. Accordingly, construing the claims most favorably to Wedderburn, three adverse actions occurring in 2016 are dismissed as time barred. Thus, allowing those same claims to be pleaded in the proposed Second Amended Complaint would be futile. The motion is denied as to those claims.[3] *Pittman*, 209 F.3d at 317.

## 2. Causation

The Court next turns to BCPS's argument that the proposed Second Amendment Rehabilitation Act claims fails to plead sufficient facts by which the Court may plausibly infer a causal connection between the adverse employment action and Wedderburn's disabilities. Like the ADA, the Rehabilitation Act prohibits disability discrimination and retaliation, and these two laws "generally are construed to impose the same requirements due to the similarity of the language of the two acts." *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 (4th Cir. 1999); *Hooven-Lewis v. Caldera*, 249 F.3d 259, 272 (4th Cir. 2001) (recognizing that the Rehabilitation Act incorporates the ADA's anti-retaliation provision). That said, at least as to discrimination

---

[3] While time-barred, these prior adverse actions may still "constitute relevant background evidence for valid claims." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). Additionally, Wedderburn's ADA claims may not be similarly time-barred because, when administrative exhaustion is required, "[t]he filing of a complaint with an administrative agency normally tolls the period within which a subsequent court action must be brought." *Kolomick v. United Steelworkers of Am., Dist. 8, AFL-CIO*, 762 F.2d 354, 356 (4th Cir. 1985).

claims, the "causative link . . . is significantly dissimilar." *Baird*, 192 F.3d at 469; *see also Constantine v. Rectors and Visitors of George Mason Univ.*, 411 F.3d 474, 498 n.17 (4th Cir. 2005). The ADA forbids discrimination "by reason of" disability, 42 U.S.C. § 12132, whereas the Rehabilitation Act prohibits discrimination "*solely* by reason of" disability, *see* 29 U.S.C. § 794(a) (emphasis added). Looking to the addition of the word "solely," courts have required a greater showing of causation in the Rehabilitation Act context. *See, e.g.*, *Krpan v. Bd. of Educ. of Howard Cty.*, No. ELH–12–2789, 2013 WL 4400475, at *9 (D. Md. Aug. 15, 2013) (citing *Baird*, 192 F.3d at 469).

Seizing on this heightened standard, BCPS argues that Wedderburn fails to state a Rehabilitation Act claim because she does not plead that she was subject to discrimination "solely by reason of her disability." ECF No. 35 at 11. The Court disagrees. At the pleading stage, plaintiffs need not "use any precise or magical words in their pleadings." *Stevenson v. City of Seat Pleasant*, 743 F.3d 411, 418 (4th Cir. 2014). Rather, the focus is on whether the alleged facts plausibly show that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678–79. Wedderburn has done so comfortably.

Wedderburn alleges that over her 20-year career in education, she has never received a poor evaluation, formal or informal, related to her performance until after she became disabled. Wedderburn also avers facts sufficient to infer BCPS's reluctance, if not refusal, to accommodate her disabilities, hostility in the workplace, and baseless negative evaluations designed to give BCPS pretext for termination. When Wedderburn persisted in seeking accommodations, BCPS removed her from the workplace, even as she presented medical proof that she was fit to work. Based on the rich factual detail in Wedderburn's proposed Second Amended Complaint, the Court finds that Wedderburn plausibly alleges that BCPS took adverse

action against her "solely" because of her disability. Wedderburn's Rehabilitation Act claims as to the causation element of are adequately pleaded and the proposed Second Amended Complaint as to this claim is not futile.

### 3. Prejudice

BCPS lastly contends that allowing amendment would prejudice BCPS by forcing it to litigate the Rehabilitation Act claims while the ADA claims remain before the EEOC. According to BCPS, this would "bypass the administrative processes that Congress and the General Assembly have put in place" and "frustrate the purpose of the administrative exhaustion requirement." ECF No. 35 at 11–12.

The Court rejects BCPS's argument that allowing the Rehabilitation Act claims to proceed automatically frustrate the purpose of administrative exhaustion. Indeed, Congress did not include an exhaustion requirement in the Rehabilitation Act, and this Court will not import one at BCPS's urging. *Ott*, 909 F.3d at 558 n.1, 661 ("[T]he Rehabilitation Act does not require exhaustion of administrative remedies prior to filing suit."). BCPS provides this Court no authority, persuasive or precedential, for why the Court should engraft the ADA's exhaustion requirements onto a parallel Rehabilitation Act claim.

That said, the Court recognizes the ADA and Rehabilitation Act claims are predicated on the same averred facts and the statutory provisions are nearly identical. Thus, to avoid waste of judicial resources as well as the risk of inconsistent resolution as to each of the statutory claims, the parties should be prepared to discuss at the next scheduling conference the possibility of staying this case until the EEOC concludes its investigation and either assumes prosecution of the ADA claims or issues a right-to-sue letter to Wedderburn.

**IV. Conclusion**

In sum, the Court grants BCPS's motion to dismiss Wedderburn's Amended Complaint. The Court also grants Wedderburn leave to file a Second Amended Complaint, but only as to those Rehabilitation Act claims which are not time barred as detailed above. Wedderburn shall have 14 days to file her Second Amended Complaint, and BCPS shall have 21 days to answer or otherwise respond. Thereafter the Court shall hold a recorded conference call to discuss scheduling in this case vis-a-vis the pending EEOC matter.

Accordingly, for all the reasons stated above, BCPS's motion to dismiss is GRANTED and Wedderburn's motion for leave to file a second amended complaint is GRANTED in part and DENIED in part. A separate Order follows.

January 23, 2020                                           /S/
Date                                                               Paula Xinis
                                                                      United States District Judge